[Crim. No. 1652.   Third Appellate District.—March 1, 1939.]

In the Matter of the Application of E. H. MEANS for a Writ of Habeas Corpus.

Earl Warren, Attorney-General, Ralph H. Cowing, Deputy Attorney-General, and John J. Hamlyn for Petitioner.

C. C. Carlton, Frank B. Durkee, C. R. Montgomery and Robert E. Reed, as *Amici Curiae*, on Behalf of Petitioner.

Hugh B. Bradford, City Attorney, and B. F. Van Dyke for Respondent.

THE COURT.—A rehearing was granted in this matter in order to give further consideration to the questions presented, and particularly to permit the department of public works an opportunity to be heard.

After reargument and the study of additional briefs we still adhere to our original conclusions, keeping in mind that we are considering primarily the right given to a municipality, to make and enforce within its limits all necessary police and sanitary regulations not in conflict with general law.

As we heretofore stated petitioner was charged with a violation of Ordinance No. 496, fourth series, section 3, and was convicted and imprisoned therefor.

This ordinance is entitled "An ordinance regulating plumbing in the City of Sacramento; providing for the examination of and issuance of certificates of registration to qualified plumbers; . . . "

It defines "plumbing work" as including "all water and sewer pipes, drainage and water pipes and vent pipes in or pertaining to any building or lot upon which same is situated, . . . ; also all material and work used in new construction or reconstruction . . . ; also all pipes in connection with the vapor or waste of any kind which may be discharged into the sewers or drains or vent pipes". It makes it unlawful for any person to engage in the plumbing business without first procuring from the health officer a certificate of registration authorizing such acts; and then declares it unlawful for any person to perform such labor without first obtaining such certificate and prescribing a penalty therefor.

In the instant case petitioner was a civil service state employee, assigned to and engaged in the work of a plumber by the state of California at the state fair grounds in Sacra-

mento. The fair grounds lie within the corporate limits of the city of Sacramento. He earned his status by virtue of having passed the necessary examinations required by the provisions of article XXIV of the state Constitution, the Civil Service Act (Stats. 1937, chap. 753) and the rules and regulations of the state personnel board. He did not have a registration certificate as required by the foregoing ordinances of Sacramento, hence his arrest and imprisonment.

Sacramento is a charter city, and is given the power therein "to regulate the construction of and the materials used in all buildings . . . ; to regulate the manner of construction and location of drains and sewers . . . ; the materials and methods used for piping buildings for water; . . . to regulate and prescribe all methods and materials used for the plumbing of all buildings, . . . and to provide for the examination and licensing of all persons . . . who shall engage in or work at the business of plumbing . . . " Sacramento Charter, section 9.

In addition to this express charter provision, Sacramento is given the power by section 11 of article XI of the state Constitution, "to make and enforce within its limits all such local police, sanitary, or other regulations as are not in conflict with general laws". Acting, therefore, under its general police power and under its specifically given charter powers Sacramento adopted the ordinance in question. Having in mind the nature of the work and its possible effect upon the health and well being of its citizens, it would appear that such requirements, both as to material and workmanship were a necessity and the failure to so protect its citizens would be a dereliction of duty upon the part of any city.

It is the contention of petitioner that the ordinance in question is in conflict with the general Civil Service Act, and to that extent is unconstitutional. We are unable to find such conflict. Ordinance No. 496 deals exclusively with the regulation of plumbing within the city of Sacramento, how it shall be done, and those who may do it. Neither in the Constitution nor in the Civil Service Act is this question mentioned, and obviously those provisions were not intended to occupy that field. Nor do we find in the rules and regulations of the personnel board any provisions pertaining to the regulation of plumbing, but even if such conflict did exist,

the provisions of the charter, being a legislative act, must be held to prevail over a rule or regulation of an appointive board, which is no more than a state agency created to perform certain governmental functions for the state in a very restricted field.

In *Pasadena School Dist.* v. *City of Pasadena,* 166 Cal. 7 [134 Pac. 985, Ann. Cas. 1915B, 1039, 47 L. R. A. (N. S.) 892], the school district, embracing all of the territory within the limits of the city, was proceeding to erect a school building without having first complied with an ordinance of the city providing for the issuance of a building permit and the payment of certain fees, and the submission of the proposed plans to the city. The city threatened to arrest the school trustees and the contractor, and the controversy was submitted to the court under section 1138 of the Code of Civil Procedure. The question, as found by the court, was, "Has the city . . . the power to subject the school district . . . to its regulating building ordinances and building code in the exercise of its police power?" In brief, the court held that unless there was some positive and general law upon the same subject which could be said to create a conflict, the charter provisions must govern, and that while the state had the power to provide for a complete and exclusive system of regulation in respect to the erection of school buildings, if it had not exercised that power the city was within its right in exacting conformity with its building laws. So, here, while the state could, if it desired, provide regulations for the installation of plumbing, it has not done so. The fact the Constitution provides for civil service and gave authority to a board to set up a system of rules and regulations in furtherance of that purpose, does not constitute a general law regulating plumbing. Even if the board did set up a system of qualifying examinations for plumbers, it would not abrogate the city's ordinance in respect to the same matter. As said in *Ex parte Campbell,* 74 Cal. 20 [15 Pac. 318, 5 Am. St. Rep. 418], "nothing less than a positive and general law upon the same subject can be said to create a conflict within the meaning of that section".

Whether or not a general law would in the present situation affect the outcome of this case we are not here called upon to decide. The charter grants the city the right and

power to make and enforce laws and regulations in respect to municipal affairs.

In *Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441 [166 Pac. 351], and quoted with approval in *Bank* v. *Bell*, 62 Cal. App. 320 [217 Pac. 538], it is said: " . . . The result is that the city has become independent of general laws upon municipal affairs. Upon such affairs a general law is of no force with respect to Los Angeles. If its charter gives it powers concerning them, it has those powers; if its charter is silent as to any such power, no general law can confer it. . . . ''

In the *Matter of Nowak*, 184 Cal. 701 [195 Pac. 402], the court said: ''The net result of this situation is that, as to municipal affairs, the charter, instead of being a grant of power, is, in effect, a limitation of powers, and, the imposition of the tax for revenue purposes being strictly a municipal affair, the city has the power to impose that tax unless the power was taken from it by the charter itself.''

That the supplying of water, and the removal of water borne waste is a municipal affair is clearly established in *Metropolitan Water Dist.* v. *Superior Court*, 2 Cal. (2d) 4 [37 Pac. (2d) 1041]; *Smith* v. *City of Glendale*, 1 Cal. App. (2d) 463 [36 Pac. (2d) 1083]; *City of Pasadena* v. *Charleville*, 215 Cal. 384 [10 Pac. (2d) 745]; *Wehrle* v. *Board of Water & Power Commrs.*, 211 Cal. 70 [293 Pac. 67].

In *City of Pasadena* v. *Charleville, supra,* the court held that the city was not bound by state law or regulation in respect to municipal affairs. In that case a contract had been let by the city for the erection of a wire fence around its municipal reservoir. A general state law required that any contract for the doing of any public work should contain certain provisions as to the payment of the prevailing *per diem* wage. The city manager refused to sign a contract for the erection of the fence which did not contain such provisions; the city taking the position that the maintenance and operation of a water distribution system was a municipal affair and not bound by general state law opposed the position taken by its manager, which contention the court upheld, declaring that the city was not controlled by any legislative enactment regarding its municipal affairs, and that the construction of the fence around the reservoir, which was

a part of the city's municipal water system was a municipal affair.

Regardless, however, of that point we believe that neither the constitutional provision providing for civil service nor the Civil Service Act applied to the situation here presented, and that the city was acting within its authority in making it a misdemeanor for anyone to do plumbing work within its limits without obtaining a license so to do. That being true, the writ sought should be discharged, and the petitioner remanded. It is so ordered.