[Civ. No. 17839.   Second Dist., Div. One.   May 28, 1951.]

CITY OF SANTA MONICA, Respondent, v. GEORGINA S. JONES et al., Defendants and Appellants; PACIFIC ELECTRIC RAILWAY COMPANY et al., Defendants and Respondents.

H. Kenneth Hutchinson for Appellants.

Royal M. Sorensen, Hill, Farrer & Burrill, C. W. Cornell and E. D. Yeomans for Respondents.

HANSON, J. pro tem.—The *first* question presented in this action, instituted by the city of Santa Monica to condemn realty for a public use, is whether the heirs at law of the original grantors, of what is conceded by the parties to be a fee on condition, are entitled to all or a part of an award for the taking of a part of the property, upon the theory that because of a breach of the conditions of the grant, the heirs were revested with the estate granted or if not so vested that the vesting thereof was so imminent as to permit of their participation in the award.

The *second* question presented is whether the respondent, Pacific Electric Railway Company—a codefendant with the appellants in this case—has by adverse possession become vested with title to a strip of land 15 feet in width along the entire westerly side of the land which was conveyed by the grantors. On the map set forth herein* the strip as condemned is shown as Parcels 1 and 2; the property conveyed by the fee simple defeasible deeds, to the extent it is condemned, is shown as 3 and 4. The remaining portions of the property (not condemned), described in the deeds, lying to the north, the east, and the south are not shown on the map. It is enough to

*See page 466.

say that at the date of the condemnation the rail line of Pacific Electric ran wholly on the uncondemned property, except as it crossed Parcel 4.

The trial court found (1) that the fee to the 15-foot strip (Parcels 1 and 2) was vested in respondent railway by adverse

possession and (2) that the appellants were not entitled to participate in the condemnation award as to Parcels 3 and 4.

Inasmuch as neither the grantors nor their heirs had made a reentry of the premises or its equivalent prior to the condemnation action or sought or procured an adjudication for conditions broken, the heirs who answered the complaint in condemnation and filed a cross-complaint against Pacific Electric Railway Company had the burden of proving (1) that some one or more of the conditions in the deeds had been breached and that such breach either had or would in a reasonably short time have vested the property absolutely in them, *or* (2) that for some other legal reason the property would in a reasonably short time have vested in them. We pass to a recital of the facts which are germane to a decision of the case.

In the early nineties the city of Santa Monica was without any rail connection with the city of Los Angeles or with any other town or city. In that decade the Southern California Railway Company, a predecessor of the respondent Pacific Electric Railway Company, decided to build and operate a "steam railroad" with one terminus in Santa Monica and another in Los Angeles. To that end it sought and procured in 1895-6 properties for its use in the then town of Santa Monica, including the property involved in this action, with the exception of the 15-foot strip heretofore mentioned. The property described in the deeds, one to the Southern California Railway Company and the other to one Gillis, both predecessors in title to the respondent, was owned by United States Senator John P. Jones of the State of Nevada, one of the early founders of Santa Monica, and Arcadia B. de Baker of Los Angeles. The record does not disclose that either of these two joint grantors owned any other property, except the 15-foot strip adjacent to the property conveyed, which would in any manner have been benefited by the conditions or covenants in the deeds. Likewise it is not shown that the present heirs at law who are here 55 years later seeking to participate in the award, own any property in Santa Monica which would be affected by any breach of the conditions of the deeds.

With these preliminary facts stated, we think it important, before we turn to a consideration of the language used in the deeds, to observe that appellants contend that the third deed (Exhibit "C") conveys a fee simple (of Parcels 3 and 4) subject to conditions subsequent and not a fee simple determinable. As respondents' position is that the contention, on the facts of this case, is a matter of no importance, we are

not called upon to decide the question and so will assume for the purposes of this case that appellants' contention is correct.

The first deed (Exhibit "A") executed and delivered in 1895 by the grantors Jones et al., granted merely an easement of a right of way to the railway subject to certain covenants or conditions subsequent; the second deed executed in 1896 by the same grantors conveyed a fee simple subject to conditions to one Gillis, who in turn conveyed by a deed the fee he obtained to a predecessor of the railway company on substantially the same covenants or conditions subsequent. As the conditions or covenants in each of these three deeds vary but slightly, and are entirely immaterial, we state the conditions of the second deed *as the composite deed* amplified by the specific language of the first, to the extent it is not detailed by the language in the second deed. The second deed conveys a fee simple title to the land described as Parcels 3 and 4, and other land not involved in the condemnation, upon the condition [stated here most favorably to appellants] that the property conveyed should "revert" to the grantors, their heirs or assigns (1) whenever the property shall not be used for railway purposes or (2) whenever the railway company shall cease to run daily passenger trains over the railroad or (3) whenever any structure of any kind is erected by the company on the property except depots and such other structures as may be needed strictly for railroad purposes. The further "condition" that the railway shall construct and maintain a substantial and suitable depot within the limits of Santa Monica to accommodate passengers in getting on and off from the trains, and that such trains shall stop at said depot for the purpose of discharging and receiving passengers, is, we think, plainly a mere covenant and not a condition. (See *Hawley* v. *Kafitz*, 148 Cal. 393 [83 P. 248, 113 Am.St.Rep. 282, 3 L.R.A.N.S. 741].)

At the time the deeds were executed and delivered it was contemplated by the parties thereto, as heretofore indicated, that a steam railroad would be built with a terminus in Santa Monica and another in Los Angeles. Nevertheless, instead of operating trains propelled by steam the railway company operated from the beginning trains propelled by electricity.

One of the so-called conditions of the deed, as has been stated, is that the railway company should run daily passenger trains and for a breach thereof for a period of six months, the property conveyed by the grantors was to "revert" to the grantors or their heirs. As early as the year 1925, while both

the original grantors apparently were alive, the railway company reduced its passenger trains to one train running daily (except Sundays and holidays) from Santa Monica to Los Angeles and another running from Los Angeles to Santa Monica. That this action on the part of the railway company was never classed as a breach by the original grantors and was never so charged by their heirs at law prior to the condemnation is the record in this case. "Daily" has always meant every day in the week except Sunday. Hence, there never was a breach of this particular condition set forth in the deed, unless it be the failure to run a passenger train, each way, *on holidays*, a point we shall discuss later in this opinion.

■ The so-called condition that the railway company should maintain a depot in Santa Monica is a mere covenant and not a condition. If it may be regarded as a condition it was, even so, not breached. This for the reason that the company maintains a freight depot, entirely suitable for passengers, seeking to get on or alight from the present daily train operated by it. The so-called condition does not require that the depot shall be used exclusively for passengers. Moreover, it may be added that the train stops at almost every street crossing to enable passengers to board or disembark from the trains. What more is required to meet the condition mentioned is far from clear to us. The "condition," which we regard as being a mere covenant, sought to impose upon the railway company an obligation to provide, as a minimum, one depot in Santa Monica where passengers could alight from or embark upon a steam train. Steam trains during the period in question stopped only at one depot in each town. We read the requirement of the deed with respect to its background and intent. So read it is plain that in no event has there been a breach of the "condition."

■ Another "condition" set forth in the deeds is that the railway company should not erect any "structure" on the property granted "except depot and such other structures as may be needed strictly for railway purposes." It is contended that this condition was breached in that the company ever since 1927—a period of a quarter of a century—has, for a consideration, permitted a signboard company to erect and maintain upon the property advertising signboards removable by order of the railway company upon 24 hours' notice. These signboards it is contended violate the condition in the deed against the erection of "structures" on the property not

"needed strictly for railway purposes." Not only are we of the view that signboards were not "structures," within the meaning of that word as used in the deeds, but even if they were the heirs were not entitled to base a reverter of the realty on that ground, short of any demand for a removal thereof. The contention of appellants is quite too tenuous to merit serious or any consideration by this court. It may be added that the cases quite generally regard a billboard as not being in the category of either a building or structure. (*Cf. Ritter* v. *Thompson,* 102 Ark. 442 [144 S.W. 910]; *Lawson* v. *Georgia Southern & F. Ry. Co.,* 142 Ga. 14 [82 S.E. 233].)

■ It is next contended that as the railway company since 1937 has leased from month to month a part of the property to a bus company for the purpose of parking its busses thereon such use is contrary to the condition that no part of the property should be used for any but railway purposes. Again it appears that the grantors did not during their lifetimes nor have their heirs at law since, demanded that the railway company should cease and desist in so doing. We decline, as did the trial court, to raise this type of an alleged breach to the dignity of a breach giving rise to a forfeiture. (Civ. Code, § 1442.) Moreover, as there is no showing by the heirs that they or their predecessors ever objected to the use of the property to park busses or place signboards thereon we see no occasion to grant any relief, whether they knew or did not know of the alleged violations. If they were not interested enough to check the property for violations, the violations must be regarded as altogether too minor to warrant forfeiture of a fee property, where, as here, it does not appear that any harm or benefit could accrue to the heirs. ■ After all the law does not regard mere trifles as a basis for forfeiture.

■ As has been said the sound rule, as gathered from the decisions, is that "The grantor has a reasonable time after breach within which to declare a forfeiture or to elect not to declare a forfeiture; if he fails to declare a forfeiture within that time, his power to do so has expired." (1 Simes, Law of Future Interests, § 170, p. 307.)

■ There remains for consideration with respect to the alleged breaches of conditions in the deeds, the contention that the failure of the railway company to run a passenger train on six holidays in each year constitutes a breach of one of the conditions. In their statement of the facts of the case appellants say: "The Santa Monica Air Line (the rail line here involved) handled a large volume of freight business but

little passenger service. Since 1920 the traffic on respondent Railway lines had materially decreased. Said Line in particular had never handled substantial passenger traffic. The total number of passengers carried by this line on a week day does not average over forty, and only two or three of those boarding the train in the City of Santa Monica. On Sundays and holidays there is no need for passenger service because these passengers are strictly commuters and do not work on these days. There is also little passenger traffic on Saturday. . . . Respondent Railway maintains other railway and bus service to Santa Monica. It operates a daily service on these lines, including Sundays and holidays. These lines, however, do not pass through any of the property sought to be condemned although they pass reasonably close. . . . The operation of the Santa Monica Air Line has been an unprofitable venture to respondent Railway for a long period of time. For this reason said respondent has made several attempts to secure consent of governmental authorities to abandon passenger service on said line, but up to October, 1949, all have been denied. . . .'' The last application by the railway (we may interpolate) was made in 1944. In view of the foregoing concession it is plain that the alleged breach is too infinitesimal upon which to base a forfeiture.

A further contention made by appellants is that the conditions of the deeds were breached because the federal postal department made use of a portion of the property as a part of its helicopter landing field. The short answer to the contention is that the evidence discloses the railway company was not aware of the trespass. The company owed the heirs no duty of policing the property against the federal government.

From what has been said it follows that the trial court rightly held that the breaches of the conditions as claimed did not warrant basing a forfeiture thereon and as a result a so-called ''reverter'' of the property to the appellants. Further reasons sustaining the trial court in its denial of any relief to appellants as to Parcels 3 and 4 will now be discussed.

In their answer to the city's complaint the appellants, as defendants, aver they are the owners of an undivided three-quarters interest (the heirs at law entitled to the remaining $\frac{1}{4}$ interest did not answer or appeal) in fee simple to the property described in the deeds, ''subject to an easement in favor of Pacific Electric Railway Company, . . . , such easement to cease whenever . . . [it] shall cease to use said real

property for railway purposes, or shall cease for a period of Six (6) months to run daily passenger trains over the railroad across said land.'' Accordingly, it will be observed that these defendant-appellants fail to aver that other provisions in the deed such as those that pertain to the erection and maintenance of residences or other structures, or such as require the construction and maintenance of a depot are ''conditions.'' Moreover, the answer does not aver that any of the so-called conditions narrated in the deeds have been breached by the railway company. Instead the answer avers (ignoring the conveyance of the fee to Gillis) that appellants are the owners in fee simple of the property described in Exhibit ''A,'' subject to an easement in favor of the railway company, ''such easement to cease whenever the . . . Company, . . . , shall cease to use said real property . . .'' This averment, as a matter of pleading, and as an admission concedes, that there had been no breach of condition or, if so, it is plain that appellants must be regarded as having waived it. To us it seems altogether probable that appellants filed their answer upon the assumption that as the property taken by the city could not in the future be used for railway purposes by the company, for that reason alone it would revert and hence that appellants were entitled to the award. Any such view, however, is directly contrary to well-established principles of law.

As was said in the leading case of *First Reformed Dutch Church* v. *Croswell*, 210 App.Div. 294 [206 N.Y.S. 132] (appeal dismissed 239 N.Y. 625 [147 N.E. 222]), ''The premises in question did in fact cease to be used for the maintenance of a church thereupon. The disuser, however, was a consequence, not a cause, of a loss of title by the plaintiff. The city of New York, in condemnation proceedings, seized the estate of the plaintiff. It also seized the rights of reverter belonging to the heirs at law of the grantors. The seizure was of the entire title, wherever resident, by a single act of appropriation. There was, therefore, no interval of time between the seizure of the plaintiff's estate and the seizure of the rights of the heirs at law during which there could have been a reverter of title to the heirs because of a church disuser of the premises necessarily consequent upon the seizure. At the moment of appropriation there had been no disuser. At that moment the estate then being enjoyed by the plaintiff might have continued forever. At that moment the rights of the heirs were mere possibilities. These rights possessed no value capable of estimate. All that was valuable was the

estate of the plaintiff. Therefore the money paid in by the city of New York should be paid to the plaintiff as for the only thing of value taken."

The case up to this point has been dealt with upon the assumption, as contended for by the appellants, that a mere breach of a condition subsequent (which breach we have shown did not exist) prior to a condemnation of the property automatically permits the heirs at law of the grantor of a fee simple on condition subsequent to participate in the award of a subsequent condemnation. The rule of law is otherwise.

In the case of a fee simple defeasible the grantor and his heirs are vested with the "possibility of a reverter," as distinguished from a "right of entry" or a "power of termination" in the case of a fee simple subject to a condition subsequent. (1 Simes, Law of Future Interests, § 159, p. 282; § 163, p. 291; § 176, p. 318; 2 Powell on Real Property, § 188, p. 40; § 191, pp. 56-57; 1 Tiffany, Real Property, 3d ed., §§ 188 and 220, pp. 302 and 383.) In short, upon the occurrence of the stated event in a grant of a fee simple defeasible the possibility of reverter takes effect in possession immediately, "whereas, on the happening of the event named" in the deed of a fee simple subject to a condition subsequent "the possessory interest does not vest immediately in the one having the right of entry for breach of condition; he must elect to terminate the granted estate before a possessory interest vests in him." (1 Simes, Law of Future Interests, § 177, p. 321.)

Accordingly, if in the instant case there had been a material breach of one of the conditions subsequent the heirs would nevertheless have had no right to participate in the award. This for the reason that the breach is not regarded as a breach until the grantor or his heirs elect to give it the requisite vitality by declaring a forfeiture based thereon by the process of reentry or its legal equivalent. Unlike a fee simple defeasible upon a limitation the breach does not cause an automatic reverter. "Strictly speaking, the owner of a right of entry for breach of condition has a privilege and a power, but not a right; for by a right, in the strict sense, is meant a claim which may be enforced by legal machinery of some sort, and until an election to forfeit for breach, there is no such right in the one for whose benefit the condition exists. . . . By reason of the analysis just stated, there is a tendency to call the right of entry for breach of condition a power of termination." (1 Simes, Law of Future Interests, § 159,

pp. 281-282.) Such is the usage employed by Restatement, Property, sections 57 and 155, and 2 Powell on Real Property, section 188, page 40; section 191, pages 56-57; section 281, page 482; and 1 Tiffany, Real Property, 3d edition, sections 188 and 220, pages 302 and 383.

The Restatement of Property, section 16, classes both the historical fee simple defeasible and the fee simple on condition subsequent as being fee simple defeasibles. The distinction between the two types of estate, as we have set them forth above, is, however, maintained. See sections 23 and 24 and sections 44 and 45.

A further contention urged upon us is that even though we hold that the heirs could not participate in the award by reason of breaches of the conditions prior to the condemnation, nevertheless, they should be held to have a right of participation, because a reverter of the property was probable in a reasonably short time. The "right" is predicated upon the language found in Restatement, Property, section 53, comment c, and upon three decisions.

In one of these cases, a decision by a judge of the U.S. District Court in *United States* v. *2,184.81 Acres of Land,* 45 F.Supp. 681, the court applied the rule of the Restatement holding that reverter was imminent and hence that the heirs should participate in the condemnation award. Another of the cases is likewise by a United States district judge who in *United States* v. *1119.15 Acres of Land,* 44 F.Supp. 449, quotes the Restatement, section 53, comment c, but held on the facts before him that no reverter was imminent. The remaining case cited by appellants is *Romero* v. *Department of Public Works,* 17 Cal.2d 189 [109 P.2d 662]. The latter is not an authority for appellants' contention. In that case the court expressed in substance the views we have here stated, but it held that as the plaintiffs, the holders of the "right of reentry" and as owners of adjoining lands, had by their complaint alleged a special value in the land taken, distinct from the value of the land, they had stated a cause of action and hence that the demurrer to the complaint was erroneously sustained. (See *comment on the case* in 29 Cal.L.Rev. 525.) We have no such case here.

The contention of appellants just mentioned rests on the fact that respondent has several times in the past and as late as in 1944 applied to the proper state and city authorities for permission to cease operating its railway for passenger travel. In that connection we observe that all such applica-

tions have been denied. Nevertheless, appellant appears to be of the view that the railway will succeed in getting the necessary approval and if not will be forced to abandon the property because of the loss it is sustaining in running its passenger car. The trial judge on the facts before him found there was no probability of a reverter within a reasonable time. We think on the record before him he could not have found otherwise. It is here of interest to note that the Supreme Court of New York in *Carter* v. *New York Cent. R. Co.*, 73 N.Y.S.2d 610 (affirmed by the Court of Appeals), a case almost on all fours with the instant case, said:

"From the contentions made in the condemnation proceeding and the demand of the plaintiffs for admission of facts, it would appear that plaintiffs are basing their claim of breach of condition upon the fact that in the year 1926 defendant applied to the Transit Commission for permission to discontinue the Inwood Station and the Transit Commission granted this permission. The fallacy of this contention is, of course, that mere permission to discontinue is not the equivalent of actual discontinuance. The fact is that the Inwood freight station was not actually discontinued until several months after title to the property in controversy vested in the City of New York.

"If plaintiffs are relying on the vesting of title in the City as a breach of the condition, their contention must fail. *First Reformed Dutch Church* v. *Croswell*, 210 App.Div. 294 [206 N.Y.S. 132], appeal dismissed 239 N.Y. 625 [147 N.E. 222].

"The first occasion upon which any of the heirs of Samuel Thomson claimed title to the property in question was the filing of their claim in the condemnation proceeding on November 30, 1929. There is no claim that any reentry or attempted reentry was made at any time prior to the vesting of title in the City on April 30, 1927. As of the date of vesting in the City the title of this property was in the defendant.

"It is well settled that upon condemnation of property held by a grantee under a deed containing a condition subsequent providing for a reverter to the grantor or his heirs upon termination of the use provided in the condition, the rights of reverter of the grantor and his heirs are terminated and the award for the property belongs to the grantee. *First Reformed Dutch Church* v. *Croswell, supra; In re Certain Premises in Block 4987, etc., City of New York (Cortelyou)*,

476

265 App.Div. 875 [38 N.Y.S.2d 25], affirmed 291 N.Y. 501 [50 N.E.2d 645].

"In the First Reformed Dutch Church case it was held that even in the case of a deed containing a limitation rather than a condition, the condemnation terminated the rights of reverter of the heirs."

We come to the second question mentioned in the opening paragraph of this opinion—the question whether respondent railway by adverse possession was vested with a fee simple absolute title to the 15-foot strip along the entire westerly side of the land which was conveyed by the deeds.

The record discloses that the railway company's predecessor took possession of this strip at the time it took possession of the land conveyed by the deed executed in 1895. As the deed conveyed property by a metes and bounds description it is quite possible that the parties intended to include the strip in the deed, but through error in the description it was not included. The fact that neither the grantors nor their heirs ever exercised any possession or control of the strip nor did they ever pay any taxes thereon tends to aid the inference.

But be that as it may it appears a deed executed on January 21, 1925 (duly recorded) by the Southern Pacific Railroad Company to the Pacific Electric Railway Company conveyed in terms not only Parcels 3 and 4, but also Parcels 1 and 2 although the Southern Pacific had no record title to the strips, Parcels 1 and 2. The record further shows that not only did the Pacific Electric continue to exercise dominion and control over these strips, but it annually paid the taxes thereon. Parcels 1 and 2 were used generally by the railway in the same manner as it used Parcels 3 and 4 and accordingly, as the trial court found and rightly concluded the railway was vested with the fee thereof. We do not pause to discuss other defenses raised by respondent railway such as waiver, laches and the statute of limitations.

Appellants' further contention that the findings, in some instances, are not as specific as they should be, and partake of the nature of conclusions is true, but nevertheless, is not prejudicial. The court did find the factual situation as we have narrated it and that was sufficient.

The judgment should be and it is affirmed.

White, P. J., and Drapeau, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 26, 1951.