[Civ. No. 3051.   Third Appellate District.—February 24, 1926.]

LILLIAN HASMAN, Administratrix, etc., Appellant, v. THE ELK GROVE UNION HIGH SCHOOL et al., Respondents.

[1] DEEDS—MAINTENANCE OF SCHOOL.—To maintain a school does not necessarily mean to keep it up perpetually.

[2] ID.—CONDITION SUBSEQUENT—FORFEITURE—INTENT—CONSTRUCTION. A condition in a deed involving a forfeiture must be strictly construed against the party for whose benefit it is created and be restrained to the most technical limits of the terms and conditions upon which the right is to be exercised; and there must be language used which is so clear as to leave no doubt that the grantor intended that an estate upon condition subsequent should be created, and the burden is upon the party claiming the forfeiture to show that such was the unmistakable intention of the agreement; and if the agreement can be reasonably interpreted so as to avoid the forfeiture, it is the duty of the court to do so.

[3] ID.—CONVEYANCE FOR SCHOOL—SATISFACTION OF CONDITION.—Where real property is conveyed to a high school district by a deed which provides that "the same shall be used for the purpose of maintaining thereon a high school, otherwise the . . . property shall revert to and become the property of" the grantor, his heirs, or assigns, such condition of the deed is satisfied when the high school district, in good faith, and without any intention at the time of changing the location of the school, erects buildings on the property and conducts a high school therein for twenty-nine years, and until the interests of the school demand a change of location.

[4] ID.—INTENT—INFERENCE.—In such case, if it had been the intention of the grantor that the property should revert upon the discontinuance of its use for high school purposes, it would have been so easy to have so stated, in plain and simple language, that

2. See 9 Cal. Jur. 340; 8 R. C. L. 1110.
3. See 9 Cal. Jur. 359.

it must be inferred from the terms actually employed that such was not his intention.

[5] ID. — PURPOSE OF CONVEYANCE — CONDITION SUBSEQUENT.—A mere provision in a deed that the property is conveyed for a particular purpose does not create a condition subsequent.

(1) 18 **C. J.**, p. 371, n. 11.    (2) 18 **C. J.**, p. 363, n. 2, 4.    (3) 18 **C. J.**, p. 371, n. 10, 11.    (4) 18 **C. J.**, p. 371, n. 10.    (5) 18 **C. J.**, p. 364, n. 7 New.

APPEAL from a judgment of the Superior Court of Sacramento County. Malcolm C. Glenn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles J. Hasman and R. L. Shinn for Appellant.

McLaughlin & McLaughlin for Respondents.

FINCH, P. J.—This action was brought by the administratrix of the estate of Joseph H. Kerr, deceased, for the recovery of certain real property and to quiet title thereto in the estate. The defendant High School was given judgment and the plaintiff has appealed therefrom. October 11, 1893, Joseph H. Kerr conveyed the land in dispute to the trustees of the School. The parts of the deed material to the questions raised by the appeal are as follows:

"The said party of the first part, for and in consideration of the sum of one dollar, . . . has remised, released and forever quitclaimed, and by these presents does remise, release and forever quitclaim unto the said parties of the second part and to their successors, all those certain lots, pieces or parcels of land, situate, lying and being in the town of Elk Grove, . . . described as follows, to-wit: Lots number twenty-five, twenty-six, twenty-seven, twenty-eight, twenty-nine and thirty of J. H. Kerr Addition to the town of Elk Grove. . . . Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. . . . To have and to hold all and singular the said premises,

together with the appurtenances, unto the said parties of the second part and to their successors forever, provided the same shall be used for the purpose of maintaining thereon a high school, otherwise the above described property shall revert to and become the property of the party of the first part, his heirs, or assigns."

Upon the execution of the deed the High School went into possession of the property, erected buildings thereon, and continuously thereafter maintained a high school upon the premises until September 29, 1922, and during that period of time no other property was used for high school purposes. In the month of December, 1920, at an election duly called to determine the question of changing the location of the High School to another site, which was a half mile distant from the old site, a majority of the electors voted in favor of the change. Thereafter buildings were erected on the new site and since September 29, 1922, the main activities of the High School have been conducted there, but the buildings on the old site continued to be used by classes in agriculture and "during stormy weather the athletic classes and work have been conducted" therein.

Appellant contends that "the following conditions are clearly shown to exist in the provisions of the deed: First: For a continuous 'maintaining' of a high school upon said property; Second: For the reversion of the property to the grantor, his heirs or assigns, should the maintaining of a high school upon said property cease." [1] To maintain a school does not necessarily mean to keep it up perpetually. In *Whalen* v. *Baltimore & O. R. Co.*, 122 Md. 187 [76 Atl. 166], the defendant had agreed "to construct and maintain a turnout and siding" at a certain point on its main road. The turnout and siding were maintained for many years and then discontinued. The court said: "We cannot yield our assent to the contention of the appellant that the word 'maintain' ordinarily means to maintain indefinitely or for-ever. Its meaning in that respect depends upon the context in which it appears and the subject matter to which it relates." The word "permanent" ordinarily implies greater continuity than the word "maintain." In *Texas & Pacific R. Co.* v. *City of Marshall*, 136 U. S. 393 [34 L. Ed. 385, 10 Sup. Ct. Rep. 846, see, also, Rose's U. S. Notes], the agreement involved provided: "In consideration of the donation of the

said sum of three hundred thousand dollars and said sixty-six acres of land, the said Texas and Pacific Railway Company will permanently establish its eastern terminus and Texas office at the City of Marshall, and will also establish and construct at said City the main machine shops and car works of said Railway Company.'' The railway company complied with the terms of its agreement for about eight years and then ''moved various parts of its machine shops and its Texas office to other cities.'' The court said: ''The contract on the part of ·the Railroad Company is satisfied and performed when it establishes and keeps a depot, and sets in operation car works and machine shops, and keeps them going for eight years, and until the interests of the Railroad Company and the public demand the removal of some or all of these subjects of the contract to some other place. This was the establishment at that point of the things contracted for in the agreement. It was the fair meaning of the words 'permanent establishment,' as there was no intention at the time of removing or abandoning them. The word 'permanent' does not mean 'forever,' or lasting forever, or existing forever. The language used is to be considered according to its nature and its relation to the subject matter of the contract, and we think that these things were permanently established by the Railway Company at Marshall.'' In *Lord* v. *Goldberg,* 81 Cal. 596, 601 [15 Am. St. Rep. 82, 22 Pac. 1126, 1128], in construing a contract of ''permanent'' employment, it is said: ''It is clear that plaintiff's employment was not intended to be for life, or for any fixed or certain period. It was to be 'permanent,' but that only meant that it was to continue indefinitely, and until one or the other of the parties should wish, for some good reason, to sever the relation.''

[2] The contracts considered in the foregoing cases were not of such character as to require a strict interpretation thereof against any of the parties thereto, but in this case the rule of strict interpretation is applicable to the condition subsequent contained in the deed. ''A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.'' (Civ. Code, sec. 1442.) ''A grant is to be interpreted in favor of the grantee.'' (Civ. Code, sec. 1069.) ''The established rule is that where the right to a forfeiture is created by contract or by law 'it

has always been considered that it was necessary to restrain it to the most technical limits of the terms and conditions upon which the right is to be exercised.' '' (*Downing* v. *Cutting Packing Co.,* 183 Cal. 91, 95 [190 Pac. 455, 459].) ''No provision in a deed relied on to create a condition subsequent will be so interpreted if the language of the provision will bear any other reasonable construction.'' (*Victoria Hospital Assn.* v. *All Persons,* 169 Cal. 445, 459 [147 Pac. 124, 126].) ''When such a condition is shown to have been created, the rule of construction is that of strictness against the grantor and in favor of the holder of the estate.'' (*Fitzgerald* v. *County of Modoc,* 164 Cal. 493, 495 [44 L. R. A. (N. S.) 1229, 129 Pac. 794].) ''There must be language used which is so clear as to leave no doubt that the grantor intended that an estate upon condition subsequent should be created—language which *ex proprio vigore* imports such a condition.'' (*Hawley* v. *Kafitz,* 148 Cal. 393, 395 [113 Am. St. Rep. 315, 3 L. R. A. (N. S.) 896, 83 Pac. 248].) ''The burden is upon the party claiming the forfeiture to show that such was the unmistakable intention of the instrument. If the agreement can be reasonably interpreted so as to avoid the forfeiture, it is our duty to do so.'' (*Quatman* v. *McCray,* 128 Cal. 285, 289 [60 Pac. 855].)

[3] The deed involved in this case can be reasonably interpreted so as to avoid a forfeiture, even without applying the rule of strict construction discussed in the foregoing decisions. In compliance with the literal terms of the deed, the property was ''used for the purpose of maintaining thereon a high school,'' and the deed does not provide for a reversion upon the discontinuance of such use, but only upon failure to so use it. Adapting the language of the opinion in *Texas & Pacific R. Co.* v. *City of Marshall, supra,* the condition of the deed was satisfied when the high school district in good faith, and without any intention at the time of changing the location of the school, erected buildings on the property and conducted a high school therein for twenty-nine years, and until the interests of the school demanded a change of location. Such use of the property was a permanent use under the authorities herein cited. ''If, by a condition that certain buildings or a certain structure shall be permanently located upon the granted land, it is meant simply that this land shall in good faith be

selected as the site of such ·buildings or structure, and that the same shall be erected upon the granted land, the condition is fulfilled by the erection of the buildings or structure upon the land, and the use of it for a time for the purpose intended, though the use of it for this purpose is subsequently abandoned.'' (Jones on the Law of Real Property in Conveyancing, sec. 687. See, also, *Crane* v. *Hyde Park,* 135 Mass. 147; *Maddox* v. *Adair* (Tex. Civ. App.), 66 S. W. 811; *Jeffersonville etc. R. R. Co.* v. *Barbour,* 89 Ind. 375.)

[4] Had it been the intention of Kerr that the property should revert upon the discontinuance of its use for high school purposes, it would have been so easy to have so stated, in plain and simple language, that it must be inferred from the terms actually employed that such was not his intention. In the following cases, relied on by appellant, the language used in the instruments there considered was so plain and certain as to require no interpretation. In *Parsons* v. *Smilie,* 97 Cal. 647 [32 Pac. 702], the condition was that the grantee should maintain on the premises ''a good lumber-yard for a period of not less than five years.'' In *Pabst* v. *Hamilton,* 133 Cal. 631 [66 Pac. 10], the land was conveyed ''upon the conditions . . . that the premises shall be used solely for the purpose of erecting, furnishing, keeping, and maintaining thereon an academic or collegiate school . . . and for a residence or residences thereon for the professors or teachers and students of the said institution while engaged in their duties therein, and for no other purpose whatever.'' In *Firth* v. *Marovich,* 160 Cal. 257 [Ann. Cas. 1912D, 1190, 116 Pac. 729], the deed provided for the forfeiture of title upon the breach of certain building restrictions contained therein. In *Johnston* v. *City of Los Angeles,* 176 Cal. 479 [168 Pac. 1047], the land in question was conveyed for specified uses and the deed provided that ''in case the party of the second part shall cease to use the said premises for the said purposes . . . then and in that case the said premises . . . shall revert to and become the property of said party of the first part, his heirs, executors, administrators or assigns.'' [5] A mere provision in a deed that the property is conveyed for a particular purpose does not create a condition subsequent. (*Fitzgerald* v. *County of Modoc,* 164 Cal. 493 [44 L. R. A. (N. S.) 1229, 129 Pac. 794].)

In view of the conclusion reached upon the main issue in the case, it is unnecessary to determine whether the use which the district is now making of the property constitutes a use "for the purpose of maintaining thereon a high school." The following cases, however, lend support to respondents' contentions in that regard: *Reclamation District* v. *Van Loben Sels*, 145 Cal. 181 [78 Pac. 638], and *Behlow* v. *Southern Pac. R. R. Co.*, 130 Cal. 16 [62 Pac. 295].

The judgment is affirmed.

Pullen, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 22, 1926.