[Civ. No. 19616. First Dist., Div. One. Jan. 29, 1963.]

ALBERT McDOUGALL et al., Defendants and Appellants, v. PALO ALTO UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

John W. Montgomery and Peter Anello for Defendants and Appellants.

Rankin, Oneal, Luckhardt & Center, C. E. Luckhardt and Charles E. Luckhardt, Jr., for Defendant and Respondent.

SULLIVAN, J.—We determine here conflicting claims to one-fourth of an award made in condemnation proceedings.

The parcel of land involved is presently located in the City of Palo Alto and formerly, before consolidation of the two municipalities, in the town of Mayfield. On August 31, 1867, William Paul as party of the first part conveyed the land to Joseph N. Spencer, George W. La Peire and Alexander Young, trustees of the Mayfield School District as parties of the second part. Appellants are successors in interest of the grantor. Respondent, a political subdivision of the State of California, is the successor in interest of the above trustees.

The pertinent provisions of the deed from Paul to the trustees are as follows: " '[T]he said party of the first part for and in consideration of his desire for the advancement of educational interests in Mayfield aforesaid and for that purpose furnishing a site for a schoolhouse there. Has granted bargained and sold and by these presents does grant bargain and sell convey and confirm unto the said parties of the second part and to their successors in office as Trustees aforesaid all that certain piece parcel or lot of land situated in the town of Mayfield aforesaid and known and designated as Lot number 86 . . . [map reference follows]. Together with all and singular the tenements hereditaments and appurtenances hereunto belonging to be used as a public school for said District forever. To have and to hold unto the said parties of the second part their successors in office for the sole use and benefit of the said Mayfield School District. And *whenever the said parties of the second part* their successors in office or those legally representing the said Mayfield School District *shall abandon the premises hereby conveyed*

*for school purposes or shall fail neglect or refuse to use said premises for common school uses and purposes then and in that event the said premises shall revert to the said party of the first part* his heirs and assigns to . . . their sole use and benefit forever.' '' (Emphasis added.)

The school district erected a school on the land and continued to operate and maintain it there until 1940 when the building was demolished.

At this point we observe that eventually there were two groups of heirs of William Paul: Those claiming an undivided three-fourths interest in the land through Katherine McDougall; and those claiming the remaining individual one-fourth through Albert K. McDougall. The latter are the eight appellants herein.

In 1948 Katherine McDougall commenced in the court below action No. 70253 against the respondent herein seeking a decree quieting title to the parcel of land in question. She was largely successful, the court rendering judgment in her favor and against this respondent determining that she was the owner of an undivided three-fourths interest. No appeal was taken and the judgment is final. Indeed respondent conceded during the course of the instant proceedings in the trial court that the persons claiming through Katherine McDougall owned a three-fourths interest in the land.

In 1959 the County of Santa Clara commenced the proceedings in eminent domain from which the instant controversy derives. The three-fourths ownership of the Katherine McDougall claimants having been conceded, the court below conducted a preliminary trial of the single issue as to whether appellants or respondent school district had title to the remaining one-fourth interest. After such determination, the remaining issues of the cause were tried and resulted in an award of $126,958 in favor of those persons determined to be the owners.

The court, in separate findings on the preliminary issue, found and concluded in substance that the deed from William Paul contained only a covenant which was fully performed; that ''in the event the language of said deed is construed to create a fee upon a condition subsequent'' the defendants McDougall (appellants herein) waived their right of reentry by failing to assert it at any time; that the deed did not create a determinable fee (referred to by the court as a conditional fee defeasible) in the school district and ''there was no automatic defeasance of Defendant District's title by

reason of the removal of the Sherman School in 1940''; that the school district never abandoned the property for school purposes; that the judgment in 1950 in favor of Katherine McDougall and against the school district was not res judicata against the latter in these proceedings; that the defendants McDougall had no right or title to the land; and that the school district was the owner of an undivided one-fourth interest in fee simple absolute and entitled to one-fourth of any award made in the condemnation proceedings. In the ensuing order and judgment of condemnation, judgment was rendered accordingly. It is from such portion of the judgment that this appeal is taken.

Appellants' contentions on appeal are: (1) that the prior judgment in favor of Katherine McDougall is res judicata against the school district; (2) that, as a matter of law, the deed from William Paul created a fee simple determinable as a result of which an undivided one-fourth interest automatically reverted to appellants upon abandonment of the property by the school district; and (3) that the finding or conclusion against abandonment is without support in the evidence.

The gist of appellants' argument on the first point is that the same deed, the same land, the same proof and the same school district were involved in the Katherine McDougall litigation and that therefore the judgment of the court in said earlier action that the plaintiff therein, as successor in interest to William Paul, had title to a three-fourths interest should control in the instant proceedings as to the ownership of the remaining fourth.[1] Appellants contend that the instant case is governed by the following rule stated in *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892]: ''In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in

---

[1]Although the file in action No. 70253 had not been brought before us, extensive portions of it were read into the present record. The complaint contained allegations that the school district had abandoned and failed to use the property for school purposes; and that the plaintiff had, but the district had not, paid taxes on the property for more than five years preceding the action. Apparently an amended complaint merely corrected the quantum of the interest claimed, i.e., three-fourths instead of the entire fee. The court found all of the allegations of the amended complaint to be true. In his memorandum decision the trial judge stated that ''the fee title of the property involved vested in the successors of William Paul when the School District ceased and failed to use the property for School purposes.''

question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?'' The trial court, on the contrary, concluded that the appellants and Katherine McDougall were at best cotenants[2] and seems to have applied the rule that there being no privity among co-tenants, generally a judgment in an action to determine title brought by or against one cotenant does not make res judicata matters decided therein in a subsequent action by or against other cotenants. (See Rest., Judgments, § 103; 29 Cal.Jur.2d, Judgments, § 276, pp. 250-251.)

 The doctrine of res judicata has a double aspect. As the court stated in *Todhunter* v. *Smith* (1934) 219 Cal. 690, 695 [28 P.2d 916], ''[a] former judgment operates as a bar against a second action upon the same cause, but in a later action upon a different claim or cause of action, it operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.'' (See also *Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 201 [99 P.2d 652, 101 P.2d 497]; 3 Witkin, Cal. Procedure, p. 1927.) In its first aspect, res judicata is effective as a merger or bar; in the second as a collateral estoppel. While under either aspect, the doctrine is in the usual instance operative to make an existing final judgment conclusive of the rights of parties to the former action or of those persons in privity with such parties (Rest., Judgments, §§ 79, 83), the doctrine has been invoked as a collateral estoppel by persons who are strangers, that is neither parties nor privies, to the former action. (See 3 Witkin, Cal. Procedure, pp. 1955-1962.) It is this second aspect of the doctrine which was expanded in the *Bernhard* case. It is this aspect with which we are here concerned since obviously appellants' cause of action is different from that of Katherine McDougall in the earlier litigation.

In announcing the rule relied upon by appellants and set forth by us above, the court in *Bernhard* abrogated the requirement of mutuality in the assertion of the plea of res judicata, in other words, the necessity that the party claim-

[2]The conclusions of law state in relevant part: '' [I]n the most favorable view, Defendants McDougall et al were merely co-tenants in respect to the said Katherine McDougall, plaintiff in action number 70253, and that the action of a co-tenant to quiet title to an interest in real property does not determine or affect the issues as between the defendants in such action and other co-tenants, even if they are substantially similar; . . .''

ing the estoppel would have been bound by the former judgment had it gone the other way. "The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. [Citations.] He is bound by that litigation only if he has been a party thereto or in privity with a party thereto . . . There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

"No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." (*Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807 at p. 812.) Accordingly, it was held in that case that the defendant bank was not precluded by lack of privity or of mutuality of estoppel from asserting against the plaintiff that the issue involved had been adjudicated by an earlier final judgment involving parties with whom the plaintiff stood in privity.

It would seem at first blush that the instant case falls within the *Bernhard* rule for, assuming an identity of issues in both the present and the earlier Katherine McDougall action, the school district against which the plea of res judicata is now asserted, was a party to the former action. However, contrary to appellants' claim, the rule announced in *Bernhard* has not had such broad and indiscriminate application. Despite the comprehensiveness of the pertinent language, it has been held that the doctrine of res judicata as declared in *Bernhard* does not apply to multiple negligence claims of several plaintiffs against a single defendant or group of defendants arising out of a single accident so that the determination of the negligence of such defendant or defendants in one action successfully brought by one plaintiff will perforce be res judicata in all subsequent actions brought by the remaining plaintiffs, upon the mere basis that the defendant or group of defendants were parties to the first action. (*Nevarov* v. *Caldwell* (1958) 161 Cal.App.2d 762 [327 P.2d 111]; *Price* v. *Atchison, T. & S. F. Ry. Co.* (1958) 164 Cal.App.2d 400 [330 P.2d 933].) The court in the *Nevarov* case not only felt that the language of the *Bernhard* case should be considered in the light of its particular facts and the issue there before the court, but also stated that "[a]n

examination of later rulings of the Supreme Court indicates that it does not entertain the view that the *Bernhard* doctrine is to be universally applied regardless of consequences.'' (*Nevarov* v. *Caldwell, supra,* at p. 770.)

In an article in 9 Stanford Law Review entitled *"Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,''* Professor Brainerd Currie, in examining the possible application of the doctrine to successive negligence actions by multiple plaintiffs arising out of a railroad accident, points out the distinction that in the *Bernhard* case the plea of res judicata was used *defensively* while in such successive negligence actions it would be used *offensively.* The author there suggests that while the *Bernhard* decision is sound in abrogating the requirement of mutuality, the rule announced in *Bernhard* should be confined to such defensive use. He also states: ''An examination of all the cases which cite the *Bernhard* case shows that no reported decision by a California court has applied the *Bernhard* doctrine to a situation like that in the railroad case—*that is, to a situation in which the plea is asserted by a plaintiff against an adversary who was the defendant in the prior action.''* (9 Stan. L. Rev. at pp. 295-296; emphasis added.) Nor have appellants cited us to any case where the doctrine has been applied ''offensively.''[3]

Appellants call our attention to the fact that the court in the *Bernhard* case overruled *People* v. *Rodgers* (1897) 118 Cal. 393 [46 P. 740, 50 P. 668]. The *Rodgers* case held that where, in a prior electors' action to remove a public official, judgment was rendered declaring the latter ineligible for office because an alien, the plea of res judicata was not available to the Attorney General in a later *quo warranto* proceeding against the same official. Denial was predicated on lack of mutuality, the Attorney General not having been a party to the first action. The foregoing developments do not help these appellants. If, under the former rule that estoppels must be mutual, rejection of the plea is based on lack of mutuality, it does not necessarily follow that upon abrogation of the rule the plea becomes automatically permissible in all instances. Furthermore, if the overruling of the *Rodgers* case means that the plea will now be recognized in situations similar to *Rodgers,* such holding merely serves to place Cali-

---

[3]In *Fairchild* v. *Bank of America* (1958) 165 Cal.App.2d 477, 482-483 [332 P.2d 101], cited by appellants, the *Bernhard* rule was applied ''defensively.''

fornia in accord with the general rule of the Restatement as to the conclusiveness of a former judgment determining status. (See Rest., Judgments, § 74.)

Finally, appellants urge that denial of res judicata herein cannot be based on its use "offensively" since their position is as fully defensive as that of the school district. We disagree. Appellants' theory of case is that the original deed created a determinable fee and that certain events have brought about the expiration of the estate with which respondent school district is now vested of record. It is appellants therefore, just as in the earlier action it was Katherine McDougall, who are in reality assuming the offensive position.

We have not been referred to, nor have we found, any case upholding the plea of res judicata in the precise instant situation. For the reasons we have given above, we are persuaded that such plea cannot be availed of "offensively" in the case before us and that the effect of the original grant should be determined anew and independently of the earlier action.

We therefore turn to the original deed of William Paul. Since no extrinsic evidence was introduced in the court below, the construction of the deed presents a question of law. We are not bound by the trial court's interpretation of it, and we therefore proceed, as it is our duty, to determine the effect of its foregoing provisions according to applicable legal principles. (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825]; *Jarrett* v. *Allstate Ins. Co.* (1962) 209 Cal.App.2d 804, 809-810 [26 Cal.Rptr. 231]; *Ziganto* v. *Taylor* (1961) 198 Cal.App.2d 603, 606 [18 Cal.Rptr. 229]; *Moffatt* v. *Tight* (1941) 44 Cal.App.2d 643, 648 [112 P.2d 910].)

Appellants contend that the deed in question created a fee simple determinable in the school district with a possibility of reverter in the original grantor, his heirs and assigns. We have concluded that such contention has merit.

"An estate in fee simple determinable is created by any limitation which, in an otherwise effective conveyance of land, (a) creates an estate in fee simple; and (b) provides that the estate shall automatically expire upon the occurrence of a stated event." (Rest., Property, § 44.) In such case, the reversionary interest left in the grantor is called a possibility of reverter. (Rest., Property, § 154; 1

432

American Law of Property, p. 427.) ■ There is no longer any question that in a proper case California courts will give judicial recognition to a fee simple determinable as an estate in real property. (*Dabney* v. *Edwards* (1935) 5 Cal.2d 1 [53 P.2d 962, 103 A.L.R. 822]; *Henck* v. *Lake Hemet Water Co.* (1937) 9 Cal.2d 136 [69 P.2d 849]; 24 Cal. L. Rev. 512.) ■ It is also established that the possibility of reverter is one of the three types of future interests in the grantor recognized at common law to which recognition is also given in California. The other two are the reversion and the right of entry for condition broken. (*Alamo School Dist.* v. *Jones* (1960) 182 Cal.App.2d 180, 183-184 [6 Cal. Rptr. 272]; see article "Future Interests in California" by Professor Harold E. Verrall, 7 West's Civil Code Ann., p. 1.)

Since there is no dispute in the instant case that the deed in question creates an estate in fee simple, our particular inquiry is directed to whether it provides that such estate shall automatically expire upon the occurrence of a stated event. ■ Whether particular language in a deed provides for the creation of an estate in fee simple determinable and of a possibility of reverter concomitant therewith is a matter of construction. No particular words are required. It is only necessary that the particular language show that the grantor intended that the estate in fee simple shall *automatically* expire on the occurrence of a stated event. ■ While a limitation using such words as "so long as," "during" and "until" have usually manifested such intent, they constitute no exclusive ritual and any appropriate words showing the intent will suffice. (2 Powell, Real Property, § 187, pp. 34-39; 1 American Law of Property, § 2.6, pp. 94-100; § 4.13, p. 429; Simes and Smith, The Law of Future Interests (2d ed.) § 286, pp. 341-345.)

■ Mr. Justice Duniway, now Judge Duniway, writing for this court in the *Alamo School District* case, *supra*, said: "A possibility of reverter is created when the duration of an estate is limited by a measure of its life additional to that inherent in the estate itself. ■ A fee simple is perpetual. Thus a possibility of reverter is created by the conveyance of a fee simple which is to last 'until' a named event, or 'during' a period limited by such an event or 'as long as,' a certain state of facts continues. Any expression conveying the same idea is sufficient. A classic example is 'to A in fee simple until St. Paul's falls' or 'as long as St. Paul's stands.' [Citation.] The rule is technical, and is based on the idea

that the duration of the estate is limited, so that, when the event upon which it is limited occurs, the estate of the grantee ipso facto terminates, there being thus a 'reverter' to the grantor.　　　It is called a 'possibility of reverter' because the event upon which the limitation depends may never occur. In the meantime, the grantee has a fee simple estate.'' (*Alamo School Dist.* v. *Jones, supra,* 182 Cal.App.2d 180, 184.)

　　　In its distilled essence the operative language of the deed before us is that ''whenever . . . [the school district] shall abandon the premises . . . or shall fail neglect or refuse to use said premises for common school uses and purposes then . . . the said premises shall revert. . . .'' We think that the above language shows an intention of the grantor that the estate shall automatically cease when the property is abandoned or not used for school purposes. In our view, there is little difference between such language and, for example, a habendum clause employing one of the more standard expressions of limitation and reading: ''to have and to hold unto the parties of the second part for the sole use of the said Mayfield School District *so long* as said premises are used for common school uses and purposes and not abandoned.'' In each instance, the grantor intends the automatic expiration of the estate on the happening of the same stated event.

While we have not been referred to any California cases in which a fee simple determinable has been created by language containing the word ''whenever,'' such language has been held appropriate to create such a fee in other jurisdictions. In *Consolidated School Dist. No. 102* v. *Walter* (1954) 243 Minn. 159 [66 N.W. 2d 881, 53 A.L.R.2d 218] cited by appellants, a deed to a school district contained the following language: '' 'To have and to hold . . . the above . . . premises . . . unto the said School District . . . In Trust and to and for the use, intent and purpose of a site for a School House . . . and . . . *whenever* the said School District removes the School House from said tract of land or *whenever* said School House ceases to be used as the Public School House . . . then the said Trust shall cease and determine and the said land shall revert to . . . [the grantors and their heirs].' '' (66 N.W.2d, p. 882; emphasis added.) It was there held that the ''deed conveyed a fee simple determinable with the grantors retaining a possibility of reverter.'' (66 N.W.2d, p. 884.) In *Carr* v. *Georgia Railroad* (1884) 74 Ga. 73, a conveyance in fee of a city lot was made to the defendant

railroad reciting that " '*whenever* said company . . . shall discontinue or cease to use the said land . . . as a depot for freight and passengers, or for both, or cease to run the engine and cars to the same, . . . this deed shall cease, determine and be void . . . and the land . . . shall revert to the donor or his heirs.' '' (74 Ga., p. 76; emphasis added.) The court held that upon the railroad's abandoning the land and ceasing to operate its road and use the depot, the land reverted automatically to the donor's heirs. (74 Ga. at pp. 80-81.) We find the language in both the *Consolidated School District* case, *supra*, and the *Georgia Railroad* case, *supra*, substantially similar to that of the instant deed.

In the conveyance at hand we encounter no difficulty in concluding that a fee simple determinable rather than a fee simple subject to a condition subsequent has been created. ▮▮▮▮ The Restatement defines the latter estate as follows: "An estate in fee simple subject to a condition subsequent is created by any limitation which, in an otherwise effective conveyance of land, (a) creates an estate in fee simple; and (b) provides that upon the occurrence of a stated event the conveyor or his successor in interest shall have the power to terminate the estate so created." (Rest., Property, § 45.) The corresponding future interest created is termed a right of reentry for condition broken. As the author of the opinion in the *Alamo School District* case states "[a] right of entry for breach of condition is clearly recognized in California. In classical theory, it was distinguished from the possibility of reverter by the fact that it was not a limitation upon the estate granted—not a measure of its duration—but a condition upon the occurrence of which the granted estate could be cut off by reentry of the grantor. An example of such a conveyance would be one of a fee simple 'upon condition that, if St. Paul's falls, the estate shall terminate.' The effect is not to terminate the estate automatically, as a reversion does, but to give the grantor a right of reentry, the estate terminating only if the right is exercised." (*Alamo School Dist.* v. *Jones, supra,* 182 Cal.App.2d at p. 185.)

Both a fee simple determinable and a fee simple subject to condition subsequent involve divesting upon the occurrence of the stated event. The problem presented in such cases is to determine whether the fee simple is to terminate automatically or only upon the exercise by the grantor, his heirs or assigns of the right of reentry. (Simes and Smith, *op. cit.*, p. 344; Powell, *op. cit.*, p. 40.) Constructional pref-

erence is for the fee simple on condition subsequent and language of condition facilitates the adoption of·such preference and the rejection of a fee simple determinable. (Powell, *op. cit.*, pp. 37, 40-41.) ▮▮▮▮ As stated in *Henck* v. *Lake Hemet Water Co.*, *supra*, 9 Cal.2d 136, 140 "[t]he difference is a distinct one, and in the case of a determinable fee which terminates upon the happening of the contingency the estate is at an end without any further act on the part of the defendant; while in the case of a vested estate subject to defeasance upon condition broken—a condition subsequent—the defendant, upon the happening of the contingency, is entitled only to the right to terminate the estate, or a right of reentry." (See *Renner* v. *Huntington etc. Oil & Gas Co.* (1952) 39 Cal.2d 93, 98 [244 P.2d 985].)

"Generally speaking, the apt and appropriate words evidencing that the grant is on condition subsequent are found in a provision for forfeiture and right of reentry." (*Fitzgerald* v. *County of Modoc* (1913) 164 Cal. 493, 495 [129 P. 794, 44 L.R.A. N.S. 1229].) In the Restatement of Property it is said that, with exceptions not here applicable, "an estate in fee simple subject to a condition subsequent is created by an otherwise effective conveyance which contains 1. some one of the following phrases, namely, 'upon express condition that,' or 'upon condition that,' or 'provided that,' or a phrase of like import; and also 2. a provision that if the stated event occurs, the conveyor 'may enter and terminate the estate hereby conveyed,' or a phrase of like import." (Rest., Property, § 45, com. j.) We find no words of condition in the deed of William Paul.

Respondent's position here is that the deed in question did not create a possibility of reverter, that it created only a covenant which was fully performed and that even if a fee simple subject to a condition subsequent was created, the right of reentry was waived. Respondent relies on *City of Santa Monica* v. *Jones* (1951) 104 Cal.App.2d 463 [232 P.2d 55]; *Savanna School Dist.* v. *McLeod* (1955) 137 Cal.App. 2d 491 [290 P.2d 593]; and the *Alamo School District* case already referred to.

The *Santa Monica* case was also a condemnation action involving the conflicting claims of the heirs of the grantor and the grantee railway company. Respondent urges first, that it is strikingly similar to the instant case because the heirs made no reentry until they made a claim in the condemnation action; and, secondly, that it disposes of appel-

lants' contention that William Paul's deed created a fee simple determinable, because the original conveyance in *Santa Monica,* while also using "whenever," created a fee simple upon condition subsequent, the court there concluding that in some instances the so-called condition was a mere covenant. These arguments must fail. The opinion in *Santa Monica* shows that the court was not called upon to determine whether a fee simple determinable or a fee simple subject to condition subsequent was created. It appears that the estate was "conceded by the parties to be a fee on condition" (104 Cal.App.2d at p. 465) and in the case of one of the three deeds involved, where appellants therein claimed that such deed conveyed a fee on condition subsequent rather than determinable and respondent therein took the position it was of no importance, the court took pains to state that "we are not called upon to decide the question" and merely assumed it was as appellants claimed. (104 Cal.App.2d at pp. 467-468.) Nor can it be fairly argued that the deed provided for a limitation with the introductory word "whenever" thus establishing a factual parallel with the instant case. No part of the deed is set forth in the opinion and it is clear that the word "whenever" is merely the paraphrase of the author of the opinion. The *Santa Monica* case is therefore clearly distinguishable.

In the *Savanna School District* case the grantee brought an action for declaratory relief and to quiet title against the heirs of the grantor. The original deed executed in 1904, reciting that it was " 'subject to the terms, conditions and agreements hereinafter contained,' " stated that the conveyance was for public school purposes only " 'and it is expressly understood and agreed that as a consideration for this conveyance . . . [the school district] shall build and maintain a public school building on said land, and that the title and ownership of said land shall revert to . . . [the grantor] upon a failure . . . [of the school district] to erect and maintain a building thereon to be used exclusively for public school purposes.' " (137 Cal.App.2d at p. 492.) The district constructed a school immediately and maintained it continuously for 27 years. In 1931 the building was torn down and replaced by a brick school building, similarly used for another 18 years. This building was then abandoned and a new school site acquired.

The court held that the deed created a covenant rather than a condition under the rule that a clause in a deed im-

posing obligations or restrictions on the grantee will be so construed if reasonably possible and that before a condition will be interpreted as a condition subsequent to destroy an estate, there must be language clearly showing such an intention upon the part of the grantor. The court felt that the law stated in both *Hasman* v. *Elk Grove Union High School* (1926) 76 Cal.App. 629 [245 P. 464] and *Booth* v. *County of Los Angeles* (1932) 124 Cal.App. 259 [12 P.2d 72] was controlling.[4] In *Hasman* the land conveyed was to be used for maintaining a high school, otherwise to revert to the grantor, his heirs and assigns. In *Booth* the conveyance was made for a road, to revert to the grantor, his heirs and assigns if not so used. Observing that the words of reversion in both *Hasman* and *Booth* contained the additional words ''heirs and assigns,'' while in the *Savanna* case they did not, the court in *Savanna* concluded that '' [t]he language used may be reasonably construed as meaning that the condition was intended by the grantors to be effective only during their lifetime.'' (137 Cal.App.2d at p. 496.)

Respondent also relies on the *Alamo School District* case. As we have explained, we think the legal principles set forth in *Alamo* are more favorable to appellants than to respondent.

All of the above cases—*Savanna*, *Hasman* and *Booth*—are distinguishable from the instant case. All of them fall properly within the following rule of constructional preference declared in the Restatement of Property, § 45, comment m: ''When an otherwise effective conveyance contains a clause which provides that 'if,' or 'upon condition that,' or 'provided that' a stated event occurs, then the estate created 'shall be null and void' or 'shall revert back,' a problem in construction is presented as to whether such conveyance creates an estate in fee simple subject to a condition subsequent or an estate in fee simple determinable. *Such a conveyance more commonly manifests an intent to create an estate in fee simple subject to a condition subsequent.*'' (Emphasis added.) *Hasman* used ''provided'' and *Booth* used ''if.'' *Savanna* used ''upon a failure'' which, in our view, is certainly more analogous to ''upon condition that'' (comment

---

[4] The court also cited, *inter alia, Rosecrans* v. *Pacific Elec. Ry. Co.* (1943) 21 Cal.2d 602 [134 P.2d 245]; *Tamalpais etc. Co.* v. *Northwestern Pac. R. R. Co.* (1946) 73 Cal.App.2d 917 [167 P.2d 825]; and *Gramer* v. *City of Sacramento* (1935) 2 Cal.2d 432 [41 P.2d 543].

m, supra) than it is to "whenever" (found in the William Paul deed).

We reach these conclusions: The language of the deed in question shows an intent to create a fee simple determinable. We find therein neither express words of condition nor the substance of language establishing a basis for a fee on condition subsequent. We conclude that the language of the conveyance enumerates with sufficient clarity the grantor's design for an automatic expiration of the estate upon the occurrence of the event stated above. All of the foregoing preclude a theory of a mere covenant. Since we conclude that the fee is determinable no declaration of forfeiture or other act of the appellants was necessary to terminate the estate conveyed. (*Henck* v. *Lake Hemet Water Co.*, *supra*, 9 Cal.2d 136, 140; *Renner* v. *Huntington etc. Oil & Gas Co.*, *supra*, 39 Cal.2d 93, 98.) By definition such estate contained its own inherent limitation and provided for its own natural termination. Unlike a fee on condition subsequent, it required no artifical termination or any reentry as a divesting event. (Powell, *op. cit.*, § 191, p. 56; Rest., Property, §§ 56, 57.) Such being the case, the trial court's finding or conclusion that the appellants waived "their right . . . to assert a claim of reversion or forfeiture" is not material to the instant case. There was no reentry to waive. Orthodox principles preclude a forfeiture. Title reverts automatically.

Finally, we examine the court's finding that the school district never abandoned the property. More particularly, the court found and concluded that the district had maintained a school on the premises until 1940, or for approximately 60 years; that in 1938, the district had plans prepared to use the property for a school for special pupils following the removal of the Sherman School but that such planned school was never constructed; that there was no automatic defeasance of the district's title by reason of the removal of the Sherman School in 1940; and that the district has never abandoned the property in that it has at all times had available plans for the construction of a special school.

As we have set forth earlier, the stated event which effected termination of the estate was the abandonment of the property *or* any failure, neglect or refusal to use the property for common school uses and purposes.

The parties rely on minutes of different meetings of the school board which were received in evidence. The minutes

of the meetings of May 26, 1938, and April 11, 1940, show in substance the receipt by the board of an opinion of the district attorney that the lot in question could not be held unless a school was maintained and that the tearing down of the Sherman School was considered to involve an abandonment of the site. Appellants rely on these and the subsequent demolition of the building as proof of formal abandonment. The minutes of a later meeting in 1944 indicate review by the board of plans for a new Sherman School for special pupils. There is testimony that plans were prepared in 1945 or 1946 which were later discussed by the board "unofficially." Other minutes in 1950, after the conclusion of the Katherine McDougall action, show a suggestion of possible use of the site for a warehouse. Respondent relies on the foregoing to negate abandonment.

We need not explore the niceties of whether the school board did or did not formalize and record an intent to abandon the property. Admittedly no school structure of any kind has been on the property since 1940 and since that date the school district has failed to use the property for any school uses or purposes. Two separate provisions in the deed therefore operate to bring the estate to an end. First, the deed terminates such estate "whenever . . . [the school district] shall abandon the premises." In our view, such abandonment was not obviated by an intent to one day use the property, no such actual use having been made of it for almost 20 years. Examined in the context of the entire document, we think that the grantor used "abandon" in the sense of "nonuse." But apart from such provision, a second clause provides for termination—"or [whenever the school district] shall fail neglect or refuse to use said premises for common school uses and purposes. . . ." Thus, even if we should accept the court's conclusion that the district never *abandoned* the land, it is beyond dispute that for almost 20 years it failed to *use* it for school purposes. Moreover, after the Katherine McDougall judgment against the district became final in 1950, any such use of the premises became, as a practical matter, impossible since the heirs of Katherine McDougall then owned an undivided three-fourths of the property.

We are therefore of the opinion that the trial court's conclusion against the automatic defeasance of the district's title was supported neither by the evidence nor by the nar-

440

row findings summarized above. Nor do we feel any support exists for the court's conclusion that the district never abandoned the property since in our view such abandonment resulted from all of the continuous circumstances of nonuse above-mentioned.

Since the construction of the deed of William Paul presents only a question of law, and since it appears without conflict in the evidence that the event prescribed in said ·deed for the expiration of the estate conveyed did occur, any further trial of this matter is unnecessary.

The judgment is reversed and the cause is remanded with directions to the trial court to amend its conclusions of law and to enter judgment in favor of the appellants in accordance with the views herein expressed.

Bray, P. J., and Molinari, J., concurred.