Filed 10/31/13  P. v. McAnally CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  JON MCANALLY,  Defendant and Appellant. | D062105  (Super. Ct. No. SCD160785) |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

C. Bradley Patton for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

The defendant in this case, a general contractor licensee, argues the trial court erred in failing to grant his petition for a writ of error *coram nobis* and relieve him from

the consequences of his plea to two conspiracy counts (Pen. Code,[1] § 182, subd. (a)(1)). The plea grew out of defendant's failure to provide workers compensation coverage for employees of his construction framing business and his failure to withhold taxes for wages he paid his employees.

Although defendant's plea was supported by ample evidence of his guilt, defendant nonetheless argues a number of circumstances require that his conviction be set aside: first, defendant contends that because the prosecutor handling his case and defendant's wife, who was also charged and also pled guilty to two conspiracy counts, engaged in a romantic relationship *following* defendant's plea, his prosecution and subsequent plea were necessarily tainted by the prosecutor's misconduct; second, defendant contends that the prosecutor used false evidence to obtain an indictment; and third, defendant contends although the prosecutor promised to assist defendant in retaining his contractor's license, defendant's license was later suspended.

Like the trial court, we find the circumstances defendant relies upon do not support relief from his conviction. As a fact that did not exist at the time of the plea, the prosecutor's *later* romantic relationship with defendant's wife does not undermine the validity of the plea. As facts available to defendant at the time of the plea, the information the prosecutor used to obtain his indictment also fails as a ground for *coram nobis* relief. The record also shows that consistent with the terms of the plea agreement, the prosecutor did take steps to assist defendant in maintaining his contractor's license.

---

[1]     All further statutory references are to the Penal Code.

Finally, we are unpersuaded by the fact the trial court granted defendant's wife's earlier *unopposed* petition for a writ of error *coram nobis*. The record shows the district attorney's consent to the earlier request for relief was based on defendant's wife's cooperation with the district attorney's investigation of the prosecutor who initially handled her case. This circumstance distinguishes her case from defendant's and demonstrates the trial court's disposition of her petition has no collateral estoppel effect on defendant's request for relief from his plea.

Accordingly, we affirm the trial court's order denying defendant's petition.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Plea*

At all material times, defendant and appellant Jon McAnally has been licensed as a general contractor and operated a construction framing business. In 2003, the district attorney discovered McAnally had been paying his employees in cash, had not withheld taxes including unemployment insurance, and had not obtained workers compensation coverage for his employees.

McAnally and his wife Tamara McAnally were both charged by way of a grand jury indictment with conspiracy and criminal violations of the Insurance Code. The deputy district attorney assigned to the case, Ernie Marugg, negotiated a plea agreement with both McAnallys. The April 2004 plea agreement permitted the McAnallys to enter pleas of guilt to conspiracy in exchange for dismissal of the remaining Insurance Code charges. The McAnallys also agreed to pay $324,940.30 in restitution to the State

3

Compensation Insurance Fund and $87,156.69 in restitution to the Employment Development Department (EDD).

As an express provision of McAnally's plea, Marugg agreed to cooperate with the Contractors State Licensing Board (CSLB) "to allow McAnally [to] maintain his contractors license."

B. *Marugg's Relationship With Tamara McAnally*

Following their respective plea agreements, the McAnallys attempted to meet their restitution obligations. By March 2005, the McAnallys had been able to pay $2,400 of the required restitution; at that point, Marugg offered to reduce both McAnallys' convictions to misdemeanors.

The McAnallys had been able to pay a total of $6,400 in restitution by late 2005, and Marugg agreed to early termination of their probation and dismissal of the charges against them under section 1203.4. Also in late 2005, Tamara McAnally was attempting to obtain a real estate license from the Department of Real Estate (DRE). Marugg volunteered to write a letter to the DRE on Tamara McAnally's behalf.

Although Tamara McAnally was not successful in obtaining a real estate license, in 2006 she continued to maintain contact with Marugg and Marugg began to actively pursue a romantic relationship with her. According to Tamara McAnally, during the course of her relationship with Marugg, Marugg told her that he decided to pursue a romantic relationship with her on April 1, 2003, when he was investigating McAnally's framing business.

4

Marugg's romantic relationship with Tamara McAnally lasted until the end of 2008 when she decided she would stay with her husband.

In 2009, Marugg stopped returning Tamara McAnally's emails and did not assist the McAnallys in getting proper credit from the EDD for restitution payments they had made; the difficulties with EDD in turn jeopardized Jon McAnally's contractor's license. At that time, Tamara McAnally learned that Marugg had pursued romantic relationships with other women who he had prosecuted.

C. *Tamara McAnally's Coram Nobis Petition*

In 2010, Tamara McAnally contacted the district attorney's office and provided a deputy district attorney with information about Marugg's conduct. Shortly thereafter, Marugg retired as a deputy district attorney.

In April 2011, Tamara McAnally filed a petition for a writ of error *coram nobis* in which she asked that she be permitted to withdraw her plea and that the charges against her be dismissed. In addition to relying on Marugg's misconduct, Tamara McAnally alleged that she was factually innocent, that she did not receive the effective assistance of counsel, and that she only agreed to plea guilty so that her husband's contractor's license could be maintained.

The district attorney did not oppose Tamara McAnally's petition, and it was granted, as well as her motion for a finding of factual innocence. (§ 851.8, subd. (d).)

D. *Jon McAnally's Coram Nobis Petition*

After his wife's plea was vacated and the charges against her were dismissed, Jon

5

McAnally filed a separate petition for a writ of *coram nobis* in which he alleged that Marugg's prosecution of him had been tainted by Marugg's undisclosed plan to pursue a romantic relationship with Tamara McAnally and that, while prosecuting the McAnallys, Marugg was involved in a romantic relationship with an expert who was assisting him in the investigation. McAnally also alleged that Marugg had presented false evidence to the grand jury and that Marugg failed to cooperate with the CSLB in maintaining McAnally's contractor's license.

The district attorney opposed Jon McAnally's petition. The district attorney noted that because Marugg's romantic relationship began after Jon McAnally's plea, the relationship did not support any relief from the plea. In addition, the district attorney noted that, because at the time of the plea the information presented to the grand jury was available to McAnally it also failed as a grounds for vacating the plea. The district attorney also disputed McAnally's contention Marugg had breached his promise to cooperate with the CSLB.

At the hearing on Jon McAnally's petition, the district attorney stated that although the prosecution did not believe Tamara McAnally was factually innocent and did not believe Marugg had an intent to pursue her at the time he was prosecuting the McAnallys, the district attorney did not oppose her petition because she had provided important information about Marugg's conduct.

The trial court denied Jon McAnally's petition.

6

## DISCUSSION

## I

"The seminal case setting forth the modern requirements for obtaining a writ of error *coram nobis* is *People v. Shipman* (1965) 62 Cal.2d 226.  There we stated:  'The writ of [error] *coram nobis* is granted only when three requirements are met.  (1) Petitioner must "show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment."  [Citations.]  (2) Petitioner must also show that the "newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial."  [Citations.]  This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied.  [Citations.]  (3) Petitioner "must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. . . ."'  (*Id*. at p. 230.)  These factors set forth in *Shipman* continue to outline the modern limits of the writ.  [Citation.]"  (*People v. Kim* (2009) 45 Cal.4th 1078, 1092-1093.)

The trial court's decision to deny or grant a writ of error *coram nobis* is reviewed under the abuse of discretion standard.  (See *People v. Kim*, *supra*, 45 Cal.4th at p. 1093.)

## II

As the People note in their brief, McAnally has been unable to demonstrate: (1) facts existed at the time of his plea, which (2) he did not know about and could not, through the exercise of reasonable diligence, have known about, and (3) which facts would have caused him not to enter a plea of guilty. Thus, the record will not support *coram nobis* relief. (See *People v. Kim*, *supra*, 45 Cal.4th at p. 1093.)

Jon McAnally's contention that Marugg's romantic relationship with his wife created a conflict of interest that disqualified Marugg from acting as the prosecutor suffers from the fact the romantic relationship did not commence until 2006, more than a year after the McAnallys' pleas were entered. Thus, the relationship was not a fact that existed at the time of his plea.

In this regard, the trial court was not required to credit the substance of Tamara McAnally's statement that, during her romantic relationship with Marugg, Marugg told her he became interested in her during the course of his investigation in 2003, before the McAnallys entered their pleas. As the prosecutor at the hearing on Jon McAnally's petition noted, Marugg's statement was hearsay and on its face little more than flattering "pillow talk."

Evidence about Marugg's other romantic relationships and, in particular, his alleged relationship with an expert who helped him in investigating the McAnallys, was not likely to impact his decision to plea. There is simply no direct logical connection between Marugg's other miscondcut and McAnally's decision to plea.

8

Similarly, evidence that Marugg presented to the grand jury was not likely to have impacted McAnally's decision to enter a plea. The disputed grand jury evidence consisted of records from McAnally's business and testimony from his employees and was plainly available to McAnally at the time of his plea. (See § 938.1, subd. (a).) McAnally now claims that this evidence was false. As the trial court noted, if McAnally did not believe the evidence collected by the prosecutor supported his conviction, it is difficult to understand his willingness to plea to two felony convictions. Thus, like the trial court, we are unconvinced that the grand jury information, if acquired by McAnally at the time of his plea, would have altered McAnally's decision to plea. In any event, given its availability at the time of the plea (see § 938.1, subd. (a)), the evidence Marugg used in obtaining the McAnally's indictment will not support *coram nobis* relief. (See *People v. Kim*, *supra*, 45 Cal.4th at p. 1093.)

McAnally's claim that Marugg did not honor his agreement to cooperate with the CSLB is rebutted by the record. Tamara McAnally's own declaration states that in 2011, after she had reported Marugg's conduct to the district attorney's office, another deputy district attorney contacted EDD and asked EDD to honor Jon McAnally's plea agreement and lift the suspension it had placed on his license. In light of that evidence, the trial court was not required to find that any breach of the plea agreement occurred.

We also reject McAnally's contention that the *coram nobis* relief his wife received somehow operated as collateral estoppel against the People on his petition. Among other reasons collateral estoppel does not apply here is the fact that, in light of her cooperation

9

in its investigation of Marugg, the district attorney's office did not oppose Tamara McAnally's petition. Where, as here, the record shows that for reasons unrelated to the merits of a claim, a claim was not contested, it may not be used offensively by a third party in a separate proceeding. (See *McDougall v. Palo Alto Unified School District* (1963) 212 Cal.App.2d 422, 429-430.)

DISPOSITION

The order denying defendant's petition is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.

10